UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

IN RE:                                )
                                      )
444 NORTH NORTHWEST HWY, LLC,         )    No. 12 B 27041
                                      )
         Debtor.                      )

**MEMORANDUM OPINION ON RECEIVER'S
APPLICATION AND OBJECTIONS THERETO**

**STATEMENT OF UNDISPUTED FACTS**

1. **BACKGROUND**

The debtor in this chapter 11 bankruptcy case, 444 North Northwest Hwy, LLC ("Debtor"), is a single asset real estate debtor whose main asset is an office building located at 444 North Northwest Hwy in Park Ridge, Illinois (the "Property"). Prior to the bankruptcy filing, New Century Bank held a mortgage on the Property. On December 2, 2009, New Century filed a complaint in the Circuit Court of Cook County, Illinois (the "State Court"), seeking foreclosure of its mortgage. (Receiver's Mot. for Approval of Compensation Ex. A, Docket No. 188.) On January 20, 2010, the State Court entered its Order Appointing Receiver, which appointed Daniel J. Hyman of Millennium Properties R/E, Inc. ("Millennium") as receiver for the Property. (*Id.*) Upon entry of that order, Debtor turned over the Property to the Receiver, who became charged with possession and control of the Property. (*Id.*) The Receiver was authorized to retain the services of Millennium to act as property manager for the Property. (*Id.*) The Order Appointing Receiver also required the Receiver to file with the State Court bi-monthly summary reports of his activity and required the Receiver to seek the State Court's approval for the payment of fees and reimbursement for expenses. (*Id.*)

On February 26, 2010, the State Court Judge entered a second order, which set the basis for Millennium's monthly management fee (4% of Gross Receipts, subject to a minimum of $4,000 per month plus a $100 administrative fee). (Compensation Mot. Ex. B.) The order also authorized the Receiver to pay leasing fees to Millennium according to the following schedule:

| New Lease, No Outside Broker | Base Rate of $1.25 per square foot per year |
|---|---|
| New Lease with Outside Broker | 150 percent of Base Rate per square foot per year, with Outside Broker charging 100% of Base Rate and Receiver 50% |
| Lease Renewal, No Outside Broker | Revised Base Rate equal to 75% of Base Rate ($0.9375) per square foot per year |
| Lease Renewal with Outside Broker | 150% of Revised Base Rate per square foot per year, with Outside Broker charging 100% of Revised Base Rate and Receiver 50% |

(*Id.*; Debtor's Omnibus Resp. 9, Docket No. 205.) The Receiver was also authorized to retain the law firm of Crane and Norcross to appeal real estate taxes for the Property. (Compensation Mot. Ex. B.) On May 20, 2010, the State Court entered an order approving the Receiver's second report and authorizing his retention of the law firm of Crowley and Lamb "for evictions and tax protest . . . ." (*Id.* Ex. C.) The Receiver's management of the Property subsequently continued on the foregoing basis for more than two years. On June 12, 2012, the Receiver filed in the state court proceeding his thirteenth bi-monthly report and a motion to approve the fees sought therein. (*Id.* Ex. D.) However, before that motion was heard by the state court judge, Debtor filed this bankruptcy case.

2.    **BANKRUPTCY PROCEEDINGS**

Debtor filed its chapter 11 case on July 6, 2012 (the "Petition Date"). Shortly thereafter, on July 12, 2012, the current mortgagee of the Property, Northbrook Bank & Trust (as successor in interest to the mortgage originally held by New Century), filed a motion to allow the Receiver to retain possession of the Property instead of turning it over to the Debtor as required by § 543 of the Bankruptcy Code (the "§ 543 Motion"). (Docket No. 18.) At a hearing on July 23, 2012, the § 543 Motion was set for briefing and trial, and the Court entered an Agreed Scheduling Order. (Docket No. 37.) Under the Agreed Order, the Receiver was to remain in possession of the Property pending trial on the § 543 Motion and was entitled to continue to manage the Property in accordance with the State Court's initial Order Appointing Receiver. He was therefore permitted to continue operations of the Property in the ordinary course of business while acting as a receiver under Illinois law. (*Id.*)

Trial on the § 543 Motion was continued by agreement multiple times. Finally, Debtor and Northbrook Bank & Trust entered into a settlement agreement whereby the Receiver was to turn the Property back over to Debtor; the agreement was approved by the Court on December 3, 2012. (Order Approving Settlement, Docket No. 212.) The Property was turned over on December 5, 2012, and Northbrook Bank later withdrew its § 543 Motion. The settlement agreement left open the issue of proper compensation to the Receiver for his fees and expenses sought, and it was expressly ordered that the settlement agreement would not foreclose or prejudice any party's rights with respect to compensation or expenses of the Receiver and his counsel. (Order Approving Settlement 3.)

3. **RECEIVER'S MOTIONS FOR COMPENSATION AND EXPENSES**

In advance of the contemplated settlement, the Receiver, through his attorneys, filed several pleadings with the Bankruptcy Court: (i) Receiver's Fourteenth Report, covering the period June 1, 2012 to October 31, 2012, (Docket No. 186), (ii) a motion to approve various fees and costs and expenses of the Receiver (the "Compensation Motion"), (Docket No. 188), and (iii) a motion to approve execution of a lease negotiated with Eye Specialists of Illinois and to approve related commissions to the lease (the "Eye Specialists Motion"), (Docket No. 190). Those pleadings were all filed on November 15, 2012, each with a notice of filing, but no notices of motion were filed until November 27, 2012, when those matters were noticed for presentation in Court on December 3, 2012. The fees and expenses requested in these documents are summarized below:

   a. Fees and Expenses contained in Receiver's Thirteenth Report (Compensation Mot. Ex. D)
      i. Receiver's management fee for the pre-bankruptcy period 03/01/2012 to 05/31/2012 ($13,100.00).
      ii. Legal fees owed to Crowley & Lamb ($6,454.17).[1]

   b. Fees and Expenses contained in Receiver's Fourteenth Report (Docket No. 186)
      i. Receiver's management fee for work from 06/01/2012 to 10/31/2012. ($22,700.00), which was for work one month pre-bankruptcy and four months post-bankruptcy.
      ii. Legal fees owed to Crowley & Lamb for the period 06/01/2012 to 10/31/2012 ($31,817.33).
      iii. Legal fees owed to Crane & Norcross for real estate tax appeal work for tax year 2012 ($18,200.00).[2]
      iv. Receiver's portion of commission claimed due from the lease with MoniCare Nannies, Inc. ($1,734.38).

---

[1] The Receiver's request for Crowley & Lamb's legal fees in his thirteenth report does not specify the time period in which the requested fees were incurred. Attached to the report are invoices for only February, March, and April 2012, totaling $2,711.00. It is unclear how the requested figure of $6,454.17 was calculated.

[2] The Receiver's Fourteenth Report does not specify when Crane & Norcross's legal services were performed or when the legal fees were incurred.

4

In addition to those fees and expenses requested, the Receiver requests approval of a commission in connection with a proposed lease that it negotiated with a current tenant, Eye Specialists of Illinois, since July 2012. (Eye Specialists Mot. ¶ 8.) Prior to turning over the Property to Debtor, the Receiver entered into a letter of intent regarding renewal of the Eye Specialists lease. (*Id.* ¶ 6.) The proposed lease has not been approved or executed. Nevertheless, the Receiver argues that if Debtor goes forward with any lease renewal with Eye Specialists, Millennium should receive a commission since it would be inequitable to deprive it of compensation for its work in obtaining the transaction. (*Id.* ¶ 10.)

4. **BRIEFING ON THE MOTIONS**

On December 2, 2012, Debtor filed its Omnibus Response in Opposition and Objection to Receiver's Motions. (Docket No. 205.) Debtor explained that it was not opposed in principal to paying the Receiver for its legitimate fees but felt it necessary to object to the fees and commissions as presented in the pending Motions. (Debtor's Resp. 2.) Debtor raised six general objections to the Receiver's requested fees and commissions:

1. The Receiver's Motions should both be denied outright because of violations of Federal Rule of Bankruptcy Procedure 2002(a)(6) and Local Rule 5082-1(A), namely, it is argued that Debtor was not given 21-days notice of the Motions and that there are various discrepancies between the requested fees and the supporting documents;

2. The Court should deny any request to pay the Receiver's attorneys, Crowley & Lamb, because they were never approved by the Bankruptcy Court under section 327 of the Bankruptcy Code;

3. The Receiver's fees and those of his legal counsel have not benefitted (and have arguably harmed) the estate and should not be allowed, and the Receiver should be "surcharged" under section 543(c)(3) for the fees it has paid itself or seeks to pay itself;

4. The Receiver's requested fees are excessive since his work has not resulted in value added to the estate;

5. The commissions and fees requested by the Receiver are in excess of the amounts authorized by the State Court, namely, it is argued that the Receiver is requesting commissions from the proposed lease with Eye Specialists of Illinois based on the formula for new leases rather than renewal leases; and

6. The proposed 10-year lease renewal with Eye Specialists of Illinois, which the Receiver negotiated, should not be approved because it is not in the best interests of the estate, namely, because in the Debtor's business judgment such lease renewal contains sub-optimal terms and was negotiated only to generate a higher commission for the Receiver.

(Debtor's Resp. 3–10.) Debtor does not object specifically to any billing entry submitted either by the Receiver or by his attorneys.

In reply, the Receiver maintains that all of the fees and expenses he is requesting are proper in light of his appointment as receiver ordered in state court, which authorized him to continue to manage the Property, retain counsel, and otherwise act in accordance with the powers and duties granted to state receivers under Illinois law. (Receiver's Reply 2–3, Docket No. 213.) The Receiver also notes that Debtor was instructed by this Court to file specific objections to each of the Receiver's motions and claims instead of lumping those objections together in one omnibus response. (Receiver's Reply 2.) Furthermore, the Receiver contests Debtor's technical objections regarding proper notice under Bankruptcy Rule 2002 and also requests that this Court waive any requirements under Local Rule 5082-1, as permitted by section 5082-1(E).

## DISCUSSION

I. **THE EYE SPECIALISTS MOTION (DOCKET NO. 190) SHOULD BE DENIED.**

ISSUE 1: **Whether the Eye Specialists Motion is Moot**

Prior to bringing the Eye Specialists Motion, the Receiver's management company, Millennium, entered into a letter of intent with a current tenant of the Property, Eye Specialists of Illinois, regarding a lease renewal. The Motion seeks approval for the Receiver to execute a

6

ten-year lease renewal based on that letter of intent and to approve the payment of a commission to Millennium associated with such renewal. Since filing the Motion, the Receiver turned the Property back over to Debtor. Because the Receiver can no longer enter into any lease agreements for the Property, his request to approve the execution of the lease should be denied as moot. Furthermore, the entity currently in control of the property, Debtor, has not joined the Eye Specialists Motion and has actually objected to the Motion.

**ISSUE 2:** **Whether the Receiver Is Entitled to Any Compensation Based on His Negotiation of the Eye Specialists Lease Renewal**

The Receiver argues that he should be entitled to a commission in the event that Debtor executes a lease renewal with Eye Specialists based on their efforts since July 2012 to secure the transaction. The Motion seeks compensation in the form of a commission claimed to be due, contingent upon execution of a renewal lease. However, a lease renewal with Eye Specialists has not been executed yet. Therefore, the issue of whether Millennium would be possibly entitled to a commission in the future is not ripe for decision and is therefore not a "case" or "controversy" under the Constitution, U.S. Const., Art. III § 2. There is no need to address Debtor's objection to the Receiver's calculation of commissions based on the possibility of this lease renewal. (*See* Debtor's Resp. 9–10.)

Even if some alternate form of compensation might be warranted, the Receiver does not detail the effort expended by Millennium or provide a basis to value Millennium's services to the estate based on the lease negotiations with Eye Specialists. The only documents attached to the motion are copies of the State Court's Order Appointing Receiver, a second order approving the leasing commission terms, and a copy of the letter of intent with Eye Specialists. Since the Motion provides no basis to calculate value of Millennium's services to the estate, there is also

no need to address Debtor's objections to the proposed Eye Specialist lease for not promoting best interests of the estate. (Debtor's Resp. 10.)

II. **RECEIVER'S REQUEST FOR COMPENSATION AND EXPENSES**

ISSUE 1: **Whether the Receiver's Compensation Motion Should Be Denied for Violating Federal Rule of Bankruptcy Procedure 2002**

A twenty-one-day notice to parties-in-interest is required for a "hearing on any entity's request for compensation or reimbursement of expenses if the request exceeds $1,000." Fed. R. Bankr. P. 2002(a)(6). The Compensation Motion was filed on 11/15/2012 along with a Notice of Filing, but not a Notice of Motion. A Notice of Motion was eventually filed on 11/27/2012, scheduling a hearing for 12/3/2012. On 12/3/2012, the Court set the matter for hearing on December 18th, which is 21 days after the notice of motion was filed. Since the Debtor received notice of the motion 21 days before the hearing on the matter, Rule 2002(a)(6) was not violated.

ISSUE 2: **The Legal Basis for Compensating the Receiver and His Legal Counsel**

The Compensation Motion contains multiple requests for compensation and reimbursement that the Receiver claims are warranted based on § 543(c)(2) of the Bankruptcy Code, which provides that: "The court, after notice and a hearing shall . . . provide for the payment of reasonable compensation for services rendered and costs and expenses incurred by such custodian." 11 U.S.C. § 543(c)(2). A receiver appointed by a state court is a "custodian" subject to § 543(b). *See* 11 U.S.C. § 101(11); *In re Franklin*, 476 B.R. 545, 551 (Bankr. N.D. Ill. 2012).

Once a custodian has knowledge of the commencement of a bankruptcy case concerning a debtor whose property is in the possession and control of the custodian, the Bankruptcy Code requires that custodian to refrain from further administering the property and to turn over all such property to the trustee (or debtor-in-possession, acting as trustee) 11 U.S.C. §§ 543(a), (b).

8

The court may also surcharge a custodian for any "improper or excessive disbursement, other than a disbursement that has been made in accordance with applicable law or that has been approved." *Id.* § 543(c)(3). However, the bankruptcy judge may excuse the custodian from complying with the requirements of sections 543(a)–(c) if it is found that the custodian's continued possession of the debtor's property would better serve the interest of the creditors. *Id.* § 543(d)(1). "If a motion is timely filed by an interested party to excuse compliance with the turnover provision, then it appears that, pending a hearing, the receiver may retain possession without fear of being cited in contempt." *In re Watkins*, 63 B.R. 46, 48 (Bankr. D. Colo. 1986).

In this case, the § 543 Motion to excuse compliance was filed six days after the Petition Date. An Agreed Order was entered (Docket No. 37), which excused the Receiver's compliance with § 543, pending trial on the motion. Specifically, the order excused the Receiver's compliance with any turnover requirement under § 543(b) by allowing him to remain in possession of the Property pending trial or other hearing on the motion to remove him. The Agreed Order also excused the Receiver's compliance with the restrictions on disbursements and administration of the property under § 543(a) by expressly allowing the Receiver to continue administering the Property pursuant to the State Court's Order Appointing Receiver.

Once the property is turned over to control of another, the custodian is said to be "superseded" and is therefore entitled to allowance of an administrative expense for "the actual, necessary expenses [not including attorney services] incurred by ... a custodian superseded by section 543 of this title, and compensation for the services of such custodian." 11 U.S.C. § 503(b)(3)(E). But in addition, § 503(b)(4) allows reasonable compensation of a custodian's attorney (and reimbursement of the attorney's actual, necessary expenses) provided that the attorney's work was an actual, necessary expense for the custodian. *Id.* § 503(b)(4).

9

Compensation for a superseded custodian's attorney must be based on the time, the nature, the extent, and the value of the attorney's services. *Id.*

**ISSUE 3:** **Whether the Receiver Was Required to Make a Separate Application under § 327 of the Bankruptcy Code for the Employment of Crowley & Lamb after Debtor Filed Its Bankruptcy Case**

The authorities addressing this issue, including the cases cited by the parties, are inconsistent. Some courts have held that even when a custodian is excused from turning over a debtor's property under § 543(d), that custodian still must assume the responsibilities of a trustee and act for the benefit of all creditors, and as such, must apply to the bankruptcy court under § 327 for the employment of attorneys. *E.g. In re Posadas Assocs.*, 127 B.R. 278, 281 (Bankr. D.N.M. 1991); *In re 245 Assocs., LLC*, 188 B.R. 743, 750 (Bankr. S.D.N.Y. 1997); *In re Uno Broadcasting Corp.*, 167 B.R. 189, 201 (Bankr. D. Ariz. 1994).

Other opinions disagree. *See In re 400 Madison Ave. L.P.*, 213 B.R. 888, 894–95 (Bankr. S.D.N.Y. 1997); *In re Falconridge, LLC*, 2007 WL 3332769, at *6 (Bankr. N.D. Ill. Nov. 8, 2007). In those cases, it was held that a custodian left in possession under § 543(d) had no role in the bankruptcy case other than to manage and preserve the property in accordance with the law governing his appointment as receiver. Under that interpretation, the Receiver in this case would be allowed to continue employment of Crowley & Lamb and seek compensation for their work because their employment and services were allowed by the State Court's Order Appointing Receiver, which was entered pre-bankruptcy. Following the rationale of those cases, it is held here that the Receiver was not required to make an application under § 327 to employ Crowley & Lamb.

10

**ISSUE 4:**   **Whether the Compensation Motion Should Be Denied Entirely for Failure to Comply with Local Rule 5082-1**

It is not clear whether Local Rule 5082-1 applies to requests for compensation made by a superseded custodian under either § 543(c)(2) or §§ 503(b)(3)(E), (b)(4). A fair reading suggests that the Local Rule applies only to those professionals that are employed under § 327; however the language can also be interpreted to encompass any request for compensation and reimbursement for professional services. Even if the Local Rule applies here, the Court may excuse or modify the requirements of the rule. *See* L.R. 5082-1(E). The Receiver argues in his Reply that strict compliance with the Local Rule is not necessary since the Compensation Motion contains all the information required by the rule.

The materials submitted by the Receiver in support of his request are not sufficiently detailed to establish that all requested fees and expenses were incurred for work that was reasonable or valuable. It is clear that the Receiver believes that he was generally authorized to incur any legal fees related to this case and likely did not think it necessary to parse them out in the Compensation Motion. On the other side, Debtor mistakenly believes that all of the requested legal fees are barred because no employment was requested under § 327, and therefore it made a general objection to those fees. It is necessary here to order the Receiver to supplement his request for fees so that it complies with Local Rule 5082-1; Debtor would then be required to respond with objections to specific requested fees. *See Brown v. Real Estate Resource Management (In re Polo Builders, Inc.)*, 397 B.R. 396, 408–09 (Bankr. N.D. Ill. 2008).

**ISSUE 5:** **Approval/Denial of Requested Fees**

    a.    <u>Receiver's management fee for the period 03/01/2012 to 05/31/2012 contained in the Receiver's Thirteenth Report</u>

The Receiver has requested $13,100 as the management fee for three months from March through May 2012. This was a period prior to the bankruptcy filing. Attached to the Thirteenth Report are three invoices that cover that period, requesting $12,300 in management fees and administrative fees and $800 for court appearances. The management fees and administrative fees billed conform to the amounts allowed by the State Court's order on February 26, 2010, for management of the Property. This is shown to be an actual, necessary expense incurred by the custodian and will be allowed as an administrative expense under § 503(b)(3)(E). As for the $800 for "court time during this period" the attached invoices do not provide any details about those court appearances or their purpose or how they were connected to the Receiver's duties regarding the Property. Therefore, the "court time" entries are not yet shown to be actual or necessary expenses and cannot be allowed.

    b.    <u>Receiver's management fee for the period 06/01/2012 to 10/31/2012 contained in the Receiver's Fourteenth Report</u>

The Receiver has requested $20,500 in management fees and $2,200 for court appearances for the five months from June through October 2012. Part of this period was prior to the bankruptcy filing, but as for the post-bankruptcy period, this Court entered the Agreed Order (Docket No. 37), which expressly permitted the Receiver (custodian) to continue to manage the Property in accordance with the existing receivership. This continued until December 2012 when the Receiver turned the Property back over to Debtor. Therefore, the Receiver can be compensated for management activity during the entire period until his turnover.

Attached to the Fourteenth Report are five invoices that cover this period, requesting a total of $20,500 in management fees and administrative fees, and also a separate invoice for $2,200 for court appearances and depositions. The management fees and administrative fees billed conform to the standards allowed by the State Court's February 26, 2010 order to compensate for management of the Property. These have been shown to be actual and necessary expenses incurred by the custodian and will be allowed as administrative expenses under § 503(b)(3)(E). As for the $2,200 for court attendance, the Fourteenth Report does not provide any details about those court appearances or their purpose or how they were connected to the Receiver's duties regarding the Property. Therefore, they have not yet been shown to be actual and necessary expenses and cannot be allowed.

c. <u>Receiver's Lease Commission for MoniCare Nannies Lease</u>

Prior to the bankruptcy filing, the Receiver's property manager, Millennium, obtained a commitment to lease part of the Property to MoniCare Nannies, Inc. The lease was approved by the State Court on June 22, 2012, along with associated commissions of $5,203.13. (Compensation Mot. Exs. F, G.) After Debtor filed its chapter 11 case, the Receiver sought to pay himself and a cooperating broker the commissions previously approved by the State Court. (*See* Mot. to Approve Lease Commission, Docket No. 88.) Under the formula for leasing commissions approved by the State Court on February 26, 2010, the cooperating broker would receive $3,468.75 and Millennium would receive $1,734.38. Debtor initially objected to the request but later agreed to the cooperating broker's commission, which was approved in an agreed order. (Docket No. 175.) Debtor reserved its objection with regard to Millennium's commission. Receiver now seeks that commission in the Compensation Motion.

The commission was approved prior to the bankruptcy. The requested commission conforms with the leasing formula previously approved by the State Court. However, Debtor objected to the amount being paid without an itemized presentation of the time spent regarding the MoniCare lease in order to determine whether such a commission would be reasonable. The Receiver argues that the requested commission is customary in commercial leasing and that such commissions are necessary expenses to induce a property manager to provide services to lease property and thereby provide value to the property. Since the State Court approved the commission based on the formula it set, the Receiver's commission for the MoniCare lease will be allowed.

  d. <u>Legal Fees to Crane & Norcross for Real Estate Tax Appeal Work</u>

The State Court previously authorized the Receiver to employ Crane and Norcross to perform real estate tax appeals on the Property back in February 2010. Attached to the Receiver's Fourteenth Report is an invoice from Crane and Norcross requesting $18,200. The Receiver seeks approval to pay this amount. The invoice is for "Professional Services rendered regarding the reduction secured in the real estate assessment for 2012 on [the Property]." (Fourteenth Report Ex. H.) The fee claims to be based on 12.50% of the annual tax savings.

Debtor has not specifically objected to this requested fee or its calculation, but neither has the applicant shown that this fee for appealing the 2012 tax assessment is owed pursuant to a contract and that the amount requested is reasonable. He will be given the opportunity to do so.

  e. <u>Legal Fees to Crowley & Lamb for work performed for Receiver (contained in Thirteenth and Fourteenth Reports)</u>

Finally, the Receiver seeks approval for payment of legal fees to its attorneys, Crowley and Lamb. In the Thirteenth Report, the Receiver requested $6,454.17 in legal fees to Crowley and Lamb. However, attached to the Thirteenth Report are invoices from the firm that only total

14

to $2,711.00. There is also an amount in the invoices that shows a past due balance, but this is not addressed in the report or the Compensation Motion. The Fourteenth Report requests legal fees in the amount of $31,817.33, but the attached invoices show a total balance due of $33,413.50. Further complicating the matter, in his Reply Brief, the Receiver requests $40,427.33 in total legal fees owed to Crowley & Lamb. There is no explanation for these discrepancies. This illustrates the need for the Receiver to comply with Local Bankruptcy Rule 5082-1 to shed light on such discrepancies. Furthermore, most of the billing entries for legal services performed after the Petition Date are redacted such that the Court cannot determine what those services were and how they were reasonable and necessary. Compliance with the Local Rule would provide much needed clarity.

The Receiver attempts to short-cut this process by arguing that the State Court authorized him to hire attorneys, and therefore, since Crowley and Lamb were attorneys hired by him in relation to the Property, their fees are *per se* reasonable. It is true that the State Court authorized the Receiver to hire Crowley and Lamb in May 2010 for "evictions and tax protest." But many of the billing entries have nothing to do with evictions or tax protest. The Receiver claims that he was authorized to hire attorneys generally and for other purposes because of the powers given to him as receiver under 735 ILCS 5/15-1704(b). Even so, that authority to "employ counsel" under the statute is clearly limited to the receiver's "full power and authority to operate, manage, and conserve such property." *Id.*

Therefore, to the extent that the legal work performed by Crowley and Lamb may not have been necessary to aid the Receiver in operating, managing, or conserving the property, it cannot be allowed as an expense of a superseded custodian. Even the case cited by the Receiver, *In re 400 Madison Avenue L.P.*, states that a receiver's unpaid bills, including those of his

15

counsel, must be determined to be reasonable before being paid. 213 B.R. at 898. Other cases that have addressed this issue make it clear that it is not a reasonable expense for a receiver to employ counsel to resist turnover efforts under 11 U.S.C. § 543. *E.g., In re Posadas Assocs.*, 127 B.R. 278, 281 (Bankr. D.N.M. 1991). Here the billing entries were often redacted thus preventing a determination of reasonableness of the services and their value to the estate; but even so it is clear that much of the legal work performed by the Receiver's counsel after the Bankruptcy Petition Date was performed to resist turnover under § 543. Such work was neither authorized by the Receiver's appointment nor was it a reasonable and necessary expense of the Receiver.

To the extent that work was related to the management of the Property (e.g. evictions of non-paying tenants), the fees for that work would be allowed. But it is not the job of the Court to parse through these billing statements and uncover the redactions to determine what the work consisted of. The Receiver will have an opportunity to revise his request for fees to conform to Local Rule 5082-1 or else risk having the requested fees denied or reduced.

## CONCLUSION

Therefore, all pending matters will be set to a future date to see whether the Receiver files supplemental matters in accord with this Memorandum Opinion. If he does not, he will be deemed to have waived his opportunity, and rulings will be made based on the present record.

ENTER:

Jack B. Schmetterer
United States Bankruptcy Judge

Dated this 8th day of January 2013.